**Affirmed and Opinion Filed June 2, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00518-CV**

**HUAN DANG, Appellant**
**V.**
**HUNG VAN TRAN, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-13968**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Kennedy
Opinion by Justice Partida-Kipness

In this interlocutory appeal, appellant Huan Dang (Dang) challenges the trial court's order denying his motion to compel arbitration. *See* TEX. CIV. PRAC. & REM. CODE §§ 51.016; 171.098(a)(1). Finding no abuse of discretion, we affirm.

## BACKGROUND

Dang owns and operates various restaurants in the DFW Metroplex. Between October 10, 2017 and December 2, 2018, appellee Hung Van Tran (Tran) provided four capital contributions totaling $500,000 to fund two of those restaurants: B Bahn Café and Bistro B. According to Tran's live pleading, he loaned the money to Dang,

and Dang promised to pay Tran back in full according to payment schedules set out in four partnership agreements. Tran further maintains that Dang promised to give Tran ownership interests in each restaurant. According to Tran, he "made partnership loans" to Dang to fund B Bahn Café and Bistro B, and "entered into" partnership agreements with Dang for each of the four loans.

In the underlying proceeding, Tran asserted that Dang failed to repay the full amount of the loans, failed to issue Tran the promised partnership interests, and used the loan money in other ventures and for Dang's personal use. Tran brought claims against Dang, B Bahn Café, and Bistro B for breach of contract, breach of fiduciary duty, quantum meruit, common law fraud, statutory fraud, joint enterprise, unjust enrichment, alter ego, and money had and received. Tran also asserted unjust enrichment, alter ego, and money had and received claims against HD Golden Michael B Corporation, AB Golden Corporation, LLC, Pho Golden, LLC, Fresh Rolls and Go, LLC (collectively the corporate defendants), and Dang's son, Brian Dang.

## I.    The Partnership Agreements

According to Tran's live pleading, he "entered into" four agreements with Dang. Tran did not attach copies of the partnership agreements to his original petition or first amended petition, which was his live pleading. He did, however, describe each agreement. Tran pleaded that, on October 10, 2017, he "entered into an initial loan agreement" with Dang "to be partners in B Banh Café" (the Café

–2–

Agreement). In the Café Agreement, Tran agreed to loan Dang $100,000 to fund B Bahn Café. After Dang and Tran entered into the Café Agreement, Dang sought additional funding for what Tran described as Dang's "Bistro B business venture." According to Tran's live pleading, he agreed to loan Dang $400,000 for the Bistro B business venture between January 2018 and December 2018. Tran and Dang entered into three partnership agreements (collectively the Bistro B Agreements) "that correspond to" the three additional loans Tran made to Dang. Tran pleaded that the Bistro B Agreements were signed January 25, 2018, June 21, 2018, and December 2, 2018.

## II.     The Motion to Compel Arbitration

On May 13, 2022, Dang filed a motion to compel arbitration in which he sought to compel Tran's claims against Dang and the corporate defendants to arbitration. According to Dang, the Café Agreement and the January Bistro B Agreement included valid and enforceable arbitration provisions, and the June and December Bistro B Agreements "contemplate an arbitration award." Dang argued that Tran's claims against Dang and the corporate defendants were related to the partnership agreements and, therefore, subject to arbitration. Dang asserted that "the events made basis to this litigation are within the scope of the arbitration agreement" because those events involved disputes between Dang and Tran "as a result of" the agreements.

The only evidence submitted by Dang in support of the motion were the four partnership agreements. The motion to compel is not certified, and Dang did not authenticate the partnership agreements. On the contrary, the motion states that he is not acknowledging or authenticating the Café Agreement or the January Bistro B Agreement:

> 3. Without acknowledging or authenticating any document on which another party's pleading is founded, the pertinent documents are attach [sic] hereto as EXHIBIT A and EXHIBIT B. Thus, a valid and enforceable arbitration provision between Plaintiff and Defendant exists on the face.

Dang did not even state that the exhibits were true and correct copies of the partnership agreements.

In response, Tran first asserted that Dang had not proven the existence of an arbitration agreement or the scope of the purported arbitration provisions. Tran also stated that "no arbitration agreement Exists [sic] and the claims at issue do not fall within the Arbitration Clause."

Tran further maintained the arbitration provisions were either invalid or inapplicable to the claims asserted in the litigation. To that end, Tran asserted that neither the June nor December Bistro B agreements included an arbitration provision and, as such, claims related to those agreements were not subject to arbitration. Tran further argued that any claims related to the Bistro B Agreements were not subject to arbitration because the December Bistro B Agreement, which did not include an arbitration provision, included a merger clause and, therefore, superseded the prior

–4–

Bistro B agreements and governed all claims related to Bistro B. As for the claims related to B Bahn Café, Tran contended the Café Agreement and an arbitration provision in the Café Agreement were invalid. Specifically, Tran argued the arbitration provision conflicted with provisions that the agreement expired after six months, and that Tran would take over B Bahn Café "without any further negotiation" if Dang failed to repay Tran during those six months. He also stated that the arbitration clause "would not be triggered due to the Partnership Agreements language and [Tran's] reliance that he would take over B Banh Café 'without any further negotiation.'"

Tran next asserted that his extra-contractual claims were not subject to arbitration, and the corporate defendants were not subject to the arbitration provisions because they were not signatories to the Café Agreement or the January Café Agreement. Tran also contended he could revoke the arbitration provisions at any time. Finally, Tran argued that Dang waived any purported right to arbitrate by substantially invoking the judicial process, and that arbitration is prejudicial to Tran.

On May 26, 2022, the trial court heard arguments from counsel on the motion to compel, denied the motion on the record at the hearing, and signed an order denying the motion.[1] No party requested the trial court to issue findings of fact and

---

[1] On the day of the hearing, Dang filed a reply in support of the motion to compel arbitration. The trial judge stated on the record that she had not read Dang's reply. The judge's signature on the order includes a time stamp of "2:05:16 PM." The docket sheet shows the hearing was scheduled to begin at 1:30 p.m. We, therefore, presume the trial court did not consider Dang's reply when making its decision.

conclusions of law, and none were issued. Dang appeals the order denying the motion to compel arbitration pursuant to the Federal Arbitration Act (FAA), and the Texas General Arbitration Act (TGAA). *See* TEX. CIV. PRAC. & REM. CODE §§ 51.016, 171.098.

## STANDARD OF REVIEW

We review the denial of a motion to compel arbitration for an abuse of discretion, deferring to the trial court on factual determinations that are supported by the evidence and reviewing legal determinations de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). The trial court did not issue findings of fact or conclusions of law to explain its denial of the motion to compel arbitration. We must, therefore, uphold the trial court's decision on any appropriate legal theory urged below. *Scott + Reid Gen. Contractors, Inc. v. Stanton*, No. 05-22-00400-CV, 2022 WL 5434185, at *2 (Tex. App.—Dallas Oct. 7, 2022, pet. filed) (mem. op.) (citing *Bonded Builders Home Warranty Ass'n of Tex. v. Rockoff*, 509 S.W.3d 523, 531–32 (Tex. App.—El Paso 2016, no pet.)). We review the trial court's decision in light of the grounds presented below by Tran because he was the party resisting arbitration. *See Fee, Smith, Sharp & Vitullo, LLP v. Strunk*, No. 05-21-00003-CV, 2021 WL 4472608, at *3 (Tex. App.—Dallas Sept. 30, 2021, pet. denied) (mem. op.) (first citing *Cardwell v. Whataburger Rests., L.L.C.*, 484 S.W.3d 426, 428 (Tex. 2016); and then citing *Ridge Nat. Res. LLC v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 118 (Tex. App.—El Paso 2018, no pet.)).

–6–

## APPLICABLE LAW

Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Seven Hills Commercial, LLC v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706, 714 (Tex. App.—Dallas 2014, pet. denied) (quoting *Roe v. Ladymon*, 318 S.W.3d 502, 511 (Tex. App.—Dallas 2010, no pet.)). A party seeking to compel arbitration must establish that a valid arbitration agreement exists and that the claims asserted are within the scope of the agreement. *Id.* at 715 (citing *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding)).

The initial evidentiary burden for proving the existence of an arbitration agreement runs with the movant. *United Rentals v. Smith*, 445 S.W.3d 808, 812 (Tex. App.—El Paso 2014, no pet.). This evidentiary burden encompasses threshold evidentiary issues such as authenticity and evidence of mutual assent. So, for example, if the movant cannot authenticate an agreement before the trial court, then it has not met its threshold evidentiary burden. *See United Rentals*, 445 S.W.3d at 814 (movant failed to prove prima facie case because the authenticating affidavit did not certify that the attached agreement was a true and correct copy or that it was complete).

Both the Federal Arbitration Act and the Texas Arbitration Act require the existence of an agreement to arbitrate to be proven to the court before the court must compel arbitration. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 124 (Tex.

2018) (first citing 9 U.S.C.A. § 4, and then citing TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(b)); *see also Wagner v. Apache Corp.*, 627 S.W.3d 277, 284 (Tex. 2021) (explaining that the presumption in favor of arbitration arises after the party seeking to compel arbitration proves that a valid arbitration agreement exists); *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 204 (Tex. 2021) ("To compel arbitration, a party must prove that a valid arbitration agreement exists."); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding) ("In determining validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts.").

Whether a valid agreement to arbitrate exists is a question of law subject to de novo review. *See Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 586 (Tex. 2022) (acknowledging that challenges claiming that a contract "never came into being" are decided by the court); *see also Brand FX, LLC v. Rhine*, 458 S.W.3d 195, 203 (Tex. App.—Fort Worth 2015, no pet.); *see generally Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 480 (Tex. 2022) ("Because the parties here dispute whether their arbitration agreement continued to exist after the 2012 settlement agreement, we agree with the trial court and court of appeals that courts must decide that issue.").

## ANALYSIS

Dang brings two issues on appeal. First, Dang contends the trial court abused its discretion by denying the motion to compel arbitration as to the claims asserted

against Dang and the corporate defendants. Second, Dang maintains the trial court abused its discretion by failing to either dismiss or abate Tran's claims in favor of arbitration.

After reviewing the record, we conclude the trial court did not abuse its discretion by denying Dang's motion to compel arbitration. As a matter of law, Dang's attachment of unauthenticated exhibits to his motion, without more, was insufficient to meet his initial evidentiary burden to prove the existence of a valid, enforceable arbitration agreement.

## I.    Dang's Threshold Evidentiary Burden

"As a threshold matter, a party seeking to compel arbitration must establish the existence of a valid arbitration agreement and the existence of a dispute within the scope of the agreement." *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013). Dang was required to put forth competent, prima facie evidence of the arbitration agreement itself. Dang's only evidence in support of the motion to compel arbitration was unsworn and unauthenticated copies of the four partnership agreements. Dang does not discuss on appeal how he met this burden in the trial court. For the reasons discussed below, we conclude that he failed to meet this initial evidentiary burden.

### A.    Unauthenticated documents constitute no evidence

Arbitration agreements are creatures of contract. *Ladymon v. Lewis*, No. 05-16-00776-CV, 2017 WL 3097652, at *4 (Tex. App.—Dallas July 21, 2017, no pet.)

(mem. op.). When a party seeks to compel arbitration, the party must first establish its right to that contract remedy. *VSR Fin. Servs. Inc. v. McLendon*, 409 S.W.3d 817, 827 (Tex. App.—Dallas 2013, no pet.). The burden of establishing an arbitration agreement's existence is generally evidentiary. *Id.* at 828. "It is axiomatic that a party seeking to prove its right to enforce a contractual remedy of arbitration must submit competent, prima facie evidence of the arbitration agreement itself." *Constant v. Gillespie*, No. 05-20-00734-CV, 2022 WL 1564555, at *5–7 (Tex. App.—Dallas May 18, 2022, no pet.) (mem. op.).

A party can satisfy its evidentiary burden to prove an arbitration agreement's existence by submitting authenticated copies of an agreement containing an arbitration clause. *Dish Network L.L.C. v. Alexander*, No. 13-20-00240-CV, 2021 WL 3085763, at *3 (Tex. App.—Corpus Christi–Edinburg July 22, 2021, pet. denied) (mem. op.); *see also Heritage Numismatic Auctions, Inc. v. Stiel*, No. 05-16-00299-CV, 2016 WL 7321437, at *2 (Tex. App.—Dallas Dec. 16, 2016, no pet.) (mem. op.) ("Before documents may be used as evidence, they must be authenticated as genuine."). To satisfy the authentication requirement, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. TEX. R. EVID. 901(a). The testimony of a witness with knowledge is one way to prove authenticity. *Kyäni, Inc. v. HD Walz II Enters., Inc.*, No. 05-17-00486-CV, 2018 WL 3545072, at *4 (Tex. App.—Dallas July 24, 2018, no pet.) (mem. op.) (citing TEX. R. EVID. 901(b)(1)). Thus, in a summary proceeding, "[a] properly

sworn affidavit stating that the attached documents are true and correct copies of the original authenticates the copies so they may be considered as evidence." *See id.* (citing *In re Estate of Guerrero*, 465 S.W.3d 693, 704 (Tex. App.—Houston [14th Dist.] 2015, pet. denied)).

Here, Dang attached the purported partnership agreements as exhibits to his motion to compel arbitration. But he did not submit any affidavits from a witness to authenticate any of his exhibits. He did not even assert in the motion that the attached copies were "true and correct." "Simply attaching a document to a motion does not make the document admissible as evidence, dispense with proper foundational evidentiary requirements, or relieve a litigant of complying with other admissibility requirements." *LocumTenens.com, LLC v. Hanna*, No. 14-18-00739-CV, 2020 WL 897362, at *3 (Tex. App.—Houston [14th Dist.] Feb. 25, 2020, no pet.) (mem. op.) (citing *In re Estate of Guerrero*, 465 S.W.3d at 704); s*ee also Gruber v. CACV of Colo., LLC*, No. 05-07-00379-CV, 2008 WL 867459, at *2 (Tex. App.—Dallas Apr. 2, 2008, no pet.) (mem. op.) (same). We conclude that, as a matter of law, Dang's mere attachment of the agreements as exhibits to his motion, without more, submitted no evidence of a valid arbitration agreement to the trial court. *See In re Estate of Guerrero*, 465 S.W.3d at 705, 706–08 (a document submitted as evidence in a motion-to-compel-arbitration context contains a substantive defect that renders it incompetent if there was a complete failure to authenticate the document).

–11–

**B.** **Preservation of error**

The record does not show that Tran objected in the trial court to Dang's copies of the agreements on the basis that they were not authenticated. And there is no ruling in the record on any such objection. However, Tran did argue in his response to the motion to compel that Dang had not proven the existence of an arbitration agreement or the scope of the purported arbitration provisions. Tran also stated in his response to the motion to compel that "no arbitration agreement Exists [sic] and the claims at issue do not fall within the Arbitration Clause." Although Tran did not use the term "authentication" when making his arguments, we conclude his arguments raised that issue sufficiently to provide Dang fair notice of the challenge to authentication. *See, e.g.*, *Tabe v. Tex. Inpatient Consultants, LLLP*, 555 S.W.3d 382, 387 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (failure of affidavit to use the term "condition precedent" did not deprive party of fair notice that opposing party denied the completion of credentialing as a condition precedent to employment); *see also Port of Houston Auth. of Harris Cnty. v. Zachry Constr. Corp.*, 513 S.W.3d 543, 571 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (allegations in pleading provided opposing party of notice that it faced a claim concerning apparent authority despite failure to use the term "apparent authority").

Regardless, Tran was not required to preserve this objection in the trial court. The complete absence of authentication, as in this case, is a substantive defect that can be raised for the first time on appeal by a party or sua sponte by the reviewing

–12–

court. *Guerrero*, 465 S.W.3d at 706–08 (appellee raised lack of authentication for first time on appeal); *Constant*, 2022 WL 1564555, at *7 (same); *LocumTenens.com, LLC*, 2020 WL 897362, at *2, 3 (appellate court raised complete absence of authentication sua sponte on appeal); *HighMount Expl. & Prod. LLC v. Harrison Interests, Ltd.*, 503 S.W.3d 557, 567–68 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (same in summary judgment context).

Because Dang did not authenticate the partnership agreements attached to its motion to compel arbitration, there is no competent evidence of an agreement to arbitrate. *See Constant*, 2022 WL 1564555, at *7; *see also In re Estate of Guerrero*, 465 S.W.3d at 705; *LocumTenens.com, LLC*, 2020 WL 897362, at *2, 3. Accordingly, we conclude the trial court did not abuse its discretion in denying Dang's motion to compel arbitration because Dang failed to meet his burden to establish the existence of an arbitration agreement. *See Dimension Homes, Inc. v. Lewis*, No. 14-20-00316-CV, 2022 WL 906086, at *4 (Tex. App.—Houston [14th Dist.] Mar. 29, 2022, no pet.) (mem. op.) (citing *In re Estate of Guerrero*, 465 S.W.3d at 705); *see also Constant*, 2022 WL 1564555, at *5–7.

Because this ground is meritorious and the trial court did not specify on which ground its decision rested, we affirm the order denying the motion to compel on this ground. We decline to address the remaining arguments raised in the briefs regarding Dang's first issue because doing so is unnecessary to the resolution of this appeal.

*See United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 814 (Tex. App.—El Paso 2014, no pet.) (citing Tᴇx. R. Aᴘᴘ. P. 47.1).

## II.     Failure to Dismiss or Abate

In his second appellate issue, Dang asserts that the trial court erred in not either staying or dismissing the litigation. Citing the Federal Arbitration Act, the Texas General Arbitration Act, and case law interpreting those statutes, Dang maintains a trial court is required to stay or dismiss the litigation when compelling litigants to arbitrate. Because Dang has not shown that the trial court erred in refusing to compel arbitration, Dang also has not shown that the trial court erred in refusing to stay the litigation. *See LocumTenens.com, LLC*, 2020 WL 897362, at *3. Thus, we overrule the second issue.

## CONCLUSION

The evidence presented by Dang in support of the motion to compel was not authenticated and, therefore, constituted no evidence to support the relief requested. The trial court's denial of the motion to compel can be upheld on that basis alone. Accordingly, we overrule Dang's appellate issues and affirm the trial court's order denying the motion to compel arbitration.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

220515F.P05

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HUAN DANG, Appellant

No. 05-22-00518-CV          V.

HUNG VAN TRAN, Appellee

On Appeal from the 192nd Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-21-13968. Opinion delivered by Justice Partida-Kipness. Justices Nowell and Kennedy participating.

In accordance with this Court's opinion of this date, the trial court's order denying the motion to compel arbitration is **AFFIRMED**.

It is **ORDERED** that appellee HUNG VAN TRAN recover his costs of this appeal from appellant HUAN DANG.

Judgment entered this 2nd day of June 2023.